Case number 21-9572, Firestorm Pyrotechnics v. Richardson. Give everybody a chance to clear out and come forward. Counsel, please proceed. Good morning, and may it please the court. Dylan Olson on behalf of the petitioner, Firestorm Pyrotechnics. I also note that Steve Schreiber, the principal of Firestorm, as well as his wife, Michelle Schreiber, are present with us today in the courtroom. Thank you. The petition before the court concerns and arises out of the revocation of an explosives license that Firestorm, a small four-employee company, held for nearly a decade. The central issue implicated in the revocation concerns the application of a willfulness standard and the erroneous determination that Firestorm willfully violated applicable regulations. This revocation should be vacated because the acting director misapplied the willfulness standard and the acting director's predicate factual findings are not based on substantial evidence. Counsel, let me let me ask you some questions about willfulness just so we can be on the same page about what it means. So let me do the hypothetical. So say your client has an inspection by the ATF in 2015, and in 2015 the ATF says, oh, you're misaccounting for these explosives. We found that you failed to account for X number of pounds of explosives. You're going to have to do a better job with your accounting system to take care of these things. And so you say, we'll do it. It was inadvertent. And then the same thing happens again in 2017. And you say, oh, well, you know, I hired a new person whose sole job is to look after these, and they're going to do a better job. And they say, okay, good job. Way to take remedial steps to make this better. And then in 2018, it happens again. And you say, oh, yes, we're we still not properly accounting for them, but I just bought some new software to keep up with this. And this new software is going to track it, and we're going to do a better job, and we're not going to have this problem again. And then it happens again, a fourth time. I mean, at some point, even though you're making an effort to get better, doesn't your failure to comply become willful under the statute? Isn't it necessarily reckless if you time and again are not accounting properly? Potentially, your honor. Yes, I think that's the case. And of course, I think that your hypothetical is factually distinguishable from what actually occurred here. But absolutely, if a licensee fails to take remedial measures, and continuously repeats the same errors again and again, or in worsening fashion, that is what constitutes plain indifference for purposes of the willfulness inquiry. Okay, I guess my question is, even if they're trying to take for me, even if the even if their position is they're trying to get better, if regardless of their steps, they never get better, and they keep making the same mistakes over and over, don't we get to don't we get there that way also? And then I'm not saying my facts are your facts. I'm obviously making it simpler. Yes, your honor. That's absolutely the case. But as part of that analysis, I think that the court should be cautioned not to act so rigidly. A reviewing authority should not reduce this willfulness analysis to simply saying, is there a repeat violation here? Rather, that should be part of the consideration that the reviewing authority should also consider other relevant factors such as what efforts has the licensee taken in the meantime to try and address the remedial or to remediate the problem? What efforts is the licensee taking to comply? Is it purely just ignoring its obligations under applicable regulations? Or is it striving to improve? Counsel, I have a threshold question about your your first argument, that the director misapplied the willfulness standard. You agree that there is that the governing explosive regulations provides a definition of willfulness, right? Yes, your honor. Okay, and isn't that the definition that the director employed before assessing whether there was evidence to support that? Isn't that the regulation? So, is that right? Yes, but the benchmark is discretionary. The applicable regulation says that a repeat violation may be considered to be plainly indifferent. Okay, before we get there, are you contending there's any ambiguity in the regulation? No, your honor. Okay, so your argument essentially is that there is a regulation, it provides for a discretionary, what, understanding of whether willfulness is satisfied? Not necessarily a discretionary standard of whether willfulness is satisfied, but it provides a framework or a benchmark for the acting director to consider whether a particular violation is willful. Our problem or contention is not that the standard of plain indifference is ambiguous or that it doesn't include consideration of past or prior alleged violations. The problem isn't consider, isn't the consideration of these past problems or prior alleged violations. The problem is when these prior alleged violations are considered in isolation and at the exclusion of other evidence that would negate a finding of willfulness. So, while the regulation certainly permits the acting director to consider one relevant factor, which is the prior alleged violations, it should also require the reviewing authority to consider evidence that goes to that willfulness inquiry, which is more flexible than what the acting applied and which is not as simple as simply determining whether or not a repeat violation has occurred. My question is predicated by the view that I'm sympathetic to the argument that sometimes government can get in the business of over-regulation. But in order to conclude that it's over-regulation, you have to look at the facts of the particular case. And in this case, as I read the summary of the facts, it appears that there are actual, either if not written warnings, in-person announcements to your company's executives that they needed to comply with certain regulations. And in fact, I think provided assistance in attempting to do so. Another question. Given that background of facts, what evidence do you have that the administrator did not consider those facts? Because the facts are pretty evident. And it seems to me that you're arguing that he didn't that he should have considered. And I don't see anything that establishes that he didn't. Yes, Your Honor. Firestorm acknowledges that prior inspections occurred, that acknowledgements were made, and that Firestorm took active efforts to coordinate and cooperate in remediation of issues. Right. Now, to get to your question, when the acting director, or where can I point to where the acting director failed or refused to consider this evidence? It's on page 22 of the administrative record, where Firestorm advances its complying efforts and says it's making good faith efforts to comply with the governing regulations. And the acting director refuses to consider it. That's not good enough, is it? I mean to say, I'm trying. No, Your Honor, that's not necessarily good enough. A licensee can't evade responsibility for its obligations by saying, I'm trying. But an acting director must consider whether or not a licensee is making good faith efforts to comply. The decisions in Rich, Jim's Pawn Shop, and Dayton Tire all establish that a licensee's efforts to comply should be a part of this analysis. So is it your argument that the legal piece of the argument, I'm trying to understand the legal error as opposed to the substantial evidence component, is that the director simply did not consider prior compliance as relevant to the willfulness inquiry? Yes, Your Honor. That's your argument. The error is twofold. Not necessarily that he didn't consider it, but that he did not include it as part of its analysis. These were included as part of the factual findings. But by omitting it from the analysis, what we have here is effectively placing the thumb of a scale. By considering the evidence that supports a willfulness finding, while simultaneously ignoring the evidence that negates that finding and removing that from the picture, it becomes easier to form a conclusion that Firestorm willfully violated applicable regulations. To illustrate, if the acting director concluded that Firestorm did not willfully violate the applicable regulations because it made improvements to its record-keeping obligations, because the discrepancies were the result of a software glitch, and it didn't consider the instances of prior alleged violations, the ATF would be before the court complaining that the willfulness inquiry was incomplete. The second error... Let me ask you some of this. I mean, so you acknowledge that the acting director noted the evidence going against willfulness in the facts section of the decision. And your complaint is, is that the acting director did not analyze that information, basically. Is that a fair summary? Part and parcel. So there were certain elements like, you know, the improvements in software. Those were certainly part of the ALJ findings of fact, which were incorporated into the acting director's decision. There were other facts that weren't necessarily included in factual findings or in the analysis, such as a comparison between prior alleged violations and the alleged violations in the revocation proceeding. Okay, well, let me ask you this, because my question's more on the legal side, and that is, is that, I mean, if we have incorporated factual findings and other statements of fact in the acting director's decision, I mean, can't we presume that the acting director considered those in analyzing the willfulness requirement? Because otherwise, why make them at all? Yeah, Your Honor, it could just be a recitation applicable testimony at the revocation proceeding. Nothing inherently resumes or, you know, mandates that conclusion, but I think it's a conclusion that can be drawn. But for other facts that weren't included, such as a comparison between prior alleged violations and the violations at issue in the revocation proceeding, those cannot be presumed to be included. For instance, look at the 2012 citation of Firestorm for the failure to maintain documents in a single document. This is a record-keeping violation that had nothing to do with the issues at issue in the revocation proceeding. Consider the 2016 citation of Firestorm when it transferred fireworks to its subsidiary, Stellar Fireworks, because ATF claimed that it needed to operate under a separate license. This isn't an issue that occurred in the revocation proceeding. It is integral to the plain indifference standard that a licensee repeats the same errors again and again, and in similar fashion. And naturally, this inquiry should require a reviewing authority to consider whether a novel. And here, that is part of the problem with the acting director's analysis, is that he presupposed that because prior citations occurred or prior alleged violations occurred, that those same errors were repeated. But there is no meaningful analysis or comparison between the prior alleged violations and the alleged violations in the revocation proceeding. Now, I'm not going to go through, you know, line by line, but I think that, you know, any assumption that the records or the prior alleged violations resemble the violations that were at issue in the revocation proceeding is belied by the record. Firestorm's level of cooperation is fundamentally different than a licensee that we see, for example, in Borkelt. In the Borkelt decision, a licensee gets cited for failure to maintain disposition records in order. The ATF goes and explains there are three ways you can do this in a compliant fashion, and the licensee decides it's not going to opt to use any of those, and it's going to adhere to its non-compliant record-keeping system. This is the type of conduct that willfulness is meant to address. Licensees that are plainly indifferent towards their compliance obligations, not licensees such as Firestorm, who have continuously made improvements since their licensure and who have made efforts to cooperate and comply with the regulations. Turning now to the acting director's factual findings, the parties all agree that substantial evidence is evidence that a reasonable mind will accept to support a conclusion. The acting director concluded that Firestorm willfully violated four categories of violations. The first of these categories is the magazine inventory requirements. It is undisputed that in this 2018 inspection, it was conducted on the heels of Firestorm's busiest time of the year, and it is undisputed that ATF did not require Firestorm to cease its operations during this inspection. So while ATF is counting fireworks, Firestorm is continuously moving products from magazine to magazine, and it is taking them away for, you know, preparing for displays. If fireworks are moved from an area that's been counted to an area that hasn't been counted, those fireworks are counted twice. If the firework is removed from an area yet to be counted, those fireworks are counted as missing. It is also undisputed that ATF never reconciled its count or its audit between magazines, thus missing fireworks from one magazine could be Neither the acting director or the ATF make any effort to defend this methodology, and at the point where this methodology and count is being used to establish willfulness, it's not supported by substantial evidence. The only defense they have of this audit is a so-called negative inventory balance, but the record establishes that the negative inventory balances resulted from a scanning gun error, a software malfunction, that is not indicative of plain indifference as set forth in the sovereign guns decision. Your Honor, may I briefly conclude? Briefly. Thanks. In closing, Your Honors, this is my client's life, work, and vocation. I have witnessed firsthand the level of dedication and attention that goes into these displays, and I can assure you that it is nothing short of magnificent. Firestorm should not be put out of business based on a one-sided and slanted analysis that considered and exaggerated everything Firestorm did wrong, while simultaneously ignoring the multitude of things that Firestorm did right. Thank you. Good morning, Your Honors. May it please the Court, Stephen Hazel for the government. Explosives licensees must store explosives safely, transfer them only to authorized recipients, and keep accurate records. Despite repeated reminders about these requirements and repeated promises to follow them, Firestorm violated them all. It left unsecured explosives littered throughout its site, it transferred a trailer full of explosives to an unauthorized recipient on multiple occasions, and it failed to keep accurate records for any of its 10 magazines. Each of these willful violations provides an independent basis for revoking Firestorm's recordkeeping. Judge Lucero, you go ahead. No, no, that's all right. Really, you'll give me time. Okay. Let's talk about your recordkeeping. So, your recordkeeping position, from what you say there, appears to be that if you repeatedly make inventory errors, not necessarily the same one over and over, that that can rise to the level of willful conduct. Your opposing counsel, it sounded to me like was taking a more narrow view of that and saying that for it to be willful, it had to be the same error repeated. Would you like to address that? Certainly, Your Honor. So, we don't think that it has to be precisely the same error, the excuse, you know, whether the excuse is a software glitch or something else, the excuse doesn't have to be the same. The error does have to be the same type of regulatory violation. So, in this particular example, the inventories. I also want to point out that, at least in this instance, the errors were very, very similar. In 2016, ATF investigators arrived at Firestorm's site, and they found that nine out of nine magazines at the time had inaccurate inventories. They met with Firestorm, they discussed the problem, Firestorm promised to comply in the future. ATF even worked with Firestorm to zero out those inventories and give them a fresh start. Yet, when the investigators returned in 2018, what they found was that all 10 of those 10 magazines were inaccurate. And so, that is not just a violation of the same regulation, but precisely the same type of conduct. And that's not the only example. We've been talking about inventories, but there are also storage and transfer violations at issue here. In 2016, ATF investigators found these unsecured explosives throughout the site. They met with Firestorm, they explained that these do need to be secured, this particular type of explosive needs to be secured. And unfortunately, when the investigators returned in 2018, they discovered these explosives all over the place. I mean, the experience with investigators is sort of shocking. And there are pictures in the records, really, of these explosives near the magazines, under the loading dock, all over the place. That's another, really, a textbook example of plain indifference to go to work every day, see these unsecured explosives, and not do anything about it, even though you're well aware of the rules and have followed them. I'd also like to... What about the country club trailer? What's a company in this type of business supposed to do? I mean, as I understand it, they took a locked trailer and gave the key to a manager and said, we're leaving these for the event. That's an illegal practice under the Act? Your Honor, the regulation that was violated in that instance was 555-106, which says you can only transfer explosives to someone who has a license or a permit. Well, that's not a transfer of the explosives. They're leaving them there overnight for an event. And Your Honor, the problematic transfer here was not sort of the problem was that there was this contractor that Firestorm used. His name is, I think, Mr. Krzywinski. He wasn't licensed, didn't have a permit to hold explosives, and yet Firestorm left the keys with the country club manager for this person to pick up. So it isn't the storage leaving the keys to the manager. It's the unauthorized, unlicensed operator who's doing the that had been found in 2016, that had been explained to Firestorm, and that unfortunately recurred in 2018. The ALJ found that that alone was deliberate, intentional, and an egregious conduct. It was a willful violation. And again, you know, any one of these would be sufficient to justify revocation of the license. Counsel, why wasn't it a misapplication of the director to ignore prior compliance as part of the willfulness inquiry? Your Honor, the director wasn't innovating in defining willfulness here. The director was applying the standard and the regulations. And in this court's decision in board chart, board chart makes very clear, it describes it as a holding and says that if you know about the rules, you're warned about them, and you repeatedly violate them, that is sufficient to establish a willful violation. That's also codified in ATS regulations, and that's what the director applied here. How do we review that? What is our standard of review for that, for the director's willfulness determination? This is substantial evidence review, Your Honor, so quite deferential. We don't parse that as sort of a separate legal mistake or anything like that in terms of our review? I don't think so, Your Honor, because again, the director looked at board chart, quoted board chart in its analysis of willfulness and then proceeded to apply it. So I don't think there's any doubt that the director was following the law of this circuit. Your Honor, I'd be very happy to answer any further questions the court may have. Otherwise, I would urge the court to deny the petition. Well, let me just chime in on that last one. I mean, wouldn't the director's, acting director's board chart and the standard be a mixed question of law and fact? Possibly, Your Honor. I guess it depends on what exactly the legal mistake Firestorm is asserting here. As I said, I think board chart is very clear about what the standard is. Board chart wasn't alone. I mean, there's seven or eight other courts of appeals who have this knowing and repeated standard. And so, again, I don't think, you know, the director was treading new ground. It was really a straightforward application of board chart. Well, to follow up on your opposing counsel's argument, if in year one, he is cited for failing to keep proper records. And in year two, he's cited for having unregulated care of the fireworks. In year three, he is cited for failing to use a licensed operator. It shows repeated violations, but all of them being functionally different, can they be said to be willful? That may well be a different case, Your Honor. It may be. Is that this case? That is not at all this case, Your Honor. So, as I've highlighted, in 2016, they committed violations of these transfer requirements, the storage requirements, and the record keeping requirements. They had conversations with ATF about what those rules were and what they were required to do. And then two years later, ATF came back and found that those specific requirements had been violated. So, this isn't a case where, you know, they did something wrong one year and then something totally different another year. Unfortunately, the reality is that they repeated the same mistakes again. Thank you. Nothing further? Nothing further. Thank you. Okay, thank you, counsel. All right, and it looks like closing counsel's out of time. The case will be submitted.